### CLEMENT v. WHITTAKER et al.

(District Court, D. New Jersey. July 16, 1915.)

#### No. 776.

1. WILLS ⊂⊃683—CONSTRUCTION—PROPERTY DEVISED.

Testator gave his residuary estate to trustees, to pay the income to the directors of a hospital. A brother of testator predeceased testator, and left a will making gifts to testator. Testator instituted suits, resulting in decrees adjudging that the enjoyment of the gifts was postponed. There was nothing to indicate that testator believed he had no interest in his brother's estate, but, on the contrary, it was fair to assume that he knew he had an interest therein, of which the right to possession was merely postponed. Held, that testator intended that the residuary clause should include whatever interest he acquired under the will of his brother.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1603–1606; Dec. Dig. ⊂⊃683.]

2. WILLS ☜683—CONSTRUCTION—PROPERTY DEVISED.
    The words "all the rest, residue and remainder of my estate," in a residuary clause, are broad enough to include any interest testator had under the will of his predeceased brother, whether he believed he had any interest or not.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1603–1606; Dec. Dig. ☜683.]

.3. WILLS ☜449—CONSTRUCTION—ESTATE DEVISED—KNOWLEDGE OF TESTATOR.
    The mere fact that a testator may not have knowledge of his estate does not cause intestacy, unless he lacked capacity to know of what his estate consisted.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 965; Dec. Dig. ☜ 449.]

4. WILLS ☜683—CONSTRUCTION—TESTAMENTARY TRUST.
    Testator gave his residuary estate to trustees, to lend, invest, and reinvest the same, and to pay the income and interest arising therefrom to a hospital, for the purposes for which the hospital was incorporated, and authorized the trustees, on conditions specified, to divide the principal sum of the trust estate and unused accumulations of interest or income among charitable institutions and hospitals they might select. Held, that the words "invest," "interest," "income," and "principal sum," did not qualify the nature of the residuary estate, but expressed merely the duties to be performed by the trustees, and the residuary clause was sufficient to include any interest testator had in the estate of his predeceased brother.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1603–1606; Dec. Dig. ☜683.]

.5. WILLS ☜452—CONSTRUCTION—DISTRIBUTION IN CONFORMITY TO RULES OF INHERITANCE AND DISTRIBUTION.
    The rule that the law favors a distribution as nearly as possible in conformity to the general rules of inheritance and distribution is entitled to weight in construing a will, when the language thereof is obscure, and when it appears that next of kin have been dependent on testator, but is not of great value where the language is not obscure, and it is not shown that any of the next of kin have been dependent on him.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 968–970; Dec. Dig. ☜452.]

·6. TRUSTS ☜147—RIGHTS OF BENEFICIARIES—ESTOPPEL.
    A release executed by a beneficiary under a testamentary trust does not operate by way of estoppel, since no one has been or can be affected by it to his injury.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 192; Dec. Dig. ☜ 147.]

In Equity. Suit by Cornelia E. Clement against Mary Ann Whittaker, personally and as executrix of Wesley E. Whittaker, deceased, and others. Bill dismissed.

McCarter & English, of Newark, N. J., for complainants.

Peter Backes and Gardner H. Cain, both of Trenton, N. J., for Mary A. Whittaker, personally and as executrix and G. H. Cain, executor.

Aaron V. Dawes, of Hightstown, N. J., for Mary J. Rellstab and Emily E. Whittaker.

Collins & Corbin, for Anna, M. E. Creveling.

J. Warren Davis, of Trenton, N. J., for Mary Camp Blair and Isabella Camp.

Selick J. Mindes, of Newark, N. J., for Fred Camp.

Bayard Stockton, of Trenton, N. J., for Mercer Hospital.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ORR, District Judge (specially presiding). This is a bill in equity whereby the plaintiff seeks such a construction of the will of Wesley E. Whittaker, deceased, as will result in a decree that said testator died intestate as to a large portion of his estate; that the plaintiff and others are proper persons to whom such portion should be ultimately distributed; and that the Mercer Hospital, which is named as residuary legatee in such will, should be excluded in such distribution. The parties defendant are numerous. Most of them will be directly benefited if the plaintiff has a decree in her favor. Some of them have permitted the bill to be taken pro confesso. Others have appeared and filed brief answers admitting the allegations of the bill. Answers at length to the merits of the bill were filed by Mary A. Whittaker, personally and as executrix of the will of Wesley E. Whittaker, deceased, by Gardner H. Cain, executor of the will of John Henry Whittaker, and by the Mercer Hospital. The case came on for hearing upon bill and answers.

Because of the views of the court upon the main questions involved, it is unnecessary to determine the exact relationship of all the parties to the testator, Wesley E. Whittaker, deceased. The facts material to a determination of the questions involved are as follows:

Wesley E. Whittaker died unmarried and without issue December 6, 1897, having first made his last will and testament and a certain codicil thereto, which will and codicil were subsequently duly admitted to probate by the proper court, which issued letters testamentary to the executors therein named. Said will and codicil are in language following:

"In the name of God, Amen.

"I, Wesley E. Whittaker, of the city of Trenton, in the county of Mercer and state of New Jersey, being of sound mind, memory and understanding, do hereby make, publish and declare this present writing to be my last will and testament, and I do hereby revoke all former wills by me at any time before made.

"First. I do hereby order my executors hereinafter named to pay all my just debts and funeral expenses as soon as practicable after my decease.

"Second. I give and bequeath unto my friend Charles H. Hall, of the city of Trenton, my diamond stud.

"Third. I give and bequeath unto Frank E. Ellison, of Jersey City, my gold watch and chain.

"Fourth. I give and bequeath unto John W. Ellison, of Jersey City, the gold watch left to me by my father, John Whittaker.

"Fifth. I give and bequeath unto by sister-in-law Mary A. Whittaker (wife of John Henry Whittaker) all of my household goods and furniture, all my wearing apparel, books, silver ware, pictures, engravings, also all my jewelry of all kinds (not hereinbefore disposed of). Also the sum of three thousand dollars.

"Sixth. I give unto the Riverview Cemetery at Trenton the sum of three hundred dollars as permanent fund to invest securely and to apply and use the interest or income therefrom from time to time toward keeping in repair and proper condition my burial lot in said cemetery.

"Seventh. I give and bequeath unto my sister, Anna W. Ellison, of Jersey City, the sum of five thousand dollars, and in case she shall not be living, I give and bequeath the said sum of five thousand dollars to her daughter, Anna M. E. Creveling.

"I give and bequeath unto the said Anna M. E. Creveling the further sum of two thousand dollars.

"I give and bequeath unto John W. Ellison the sum of one thousand dollars.

"I give and bequeath unto Frank E. Ellison, Harry B. Ellison, Percy Ellison and Roy Ellison (children of John W. Ellison) the sum of one thousand dollars to be divided equally among them, and in case of the decease of any of them, his share shall be equally divided among his surviving brothers.

"I give and bequeath unto my brother, John Henry Whittaker, the sum of one thousand dollars, also the library of mine now in his possession, also the case of minerals and the autograph letters formerly belonging to my brother, Albert J. Whittaker, also such other cases and books of mine now in his possession.

"I give and bequeath unto my brother, George R. Whittaker, the sum of one thousand dollars.

"Eighth. I give and bequeath unto my sister-in-law Attie E. Williams (wife of John H. Williams) the sum of one thousand dollars as a token of my regard for her.

"I give and bequeath unto my housekeeper, Annie Hart, the sum of one thousand dollars in remembrance of her long and faithful services in my family.

"Ninth. I give and bequeath unto 'The Union Industrial Home Association for Destitute Children of Trenton, New Jersey,' located on Chestnut avenue, near Greenwood avenue, the sum of one thousand dollars. And also I give and bequeath unto the 'Saint Francis Hospital,' located on Chambers street, near Hamilton avenue, in said city of Trenton, the sum of one thousand dollars.

"Tenth. I hereby authorize and empower my executors (and the survivor of them) to sell and convey all my real estate at either public or private sale and to execute good and lawful conveyances for the same.

"Eleventh. All the rest, residue and remainder of my estate, I do hereby give unto my brother, George R. Whittaker, and my sister-in-law, Mary A. Whittaker (wife of my brother John Henry Whittaker), and to the survivor of them, to have and to hold as trustees, to rent, invest and reinvest the same, and to pay the income and interest arising therefrom (first deducting all taxes, insurances, repairs and all other costs, assessments and impositions whatsoever) to the board of directors of 'The Mercer Hospital' at Trenton, to be used by said board of directors for the uses and purposes mentioned as the object for which said hospital was incorporated in the certificate of incorporation now on record in the Mercer county clerk's office for the term of nine years from the date of their accounting as such executors in yearly payments: Provided, however, that if at any time within said term my said trustees (or the survivor of them) shall decide that said income is not being properly applied (of which fact I hereby direct my said trustees, or the survivor of them shall be the sole and only judge, and whose judgment and decision shall be final and conclusive) I hereby direct, require and empower them (or the survivor of them) to withhold all further payments of said income, without any notices to said board of trustees or to said 'The Mercer Hospital' and therefrom and thereafter to divide the whole of the principal sum of said trust estate and all unused accumulations of interest or income thereon (less all costs, charges and expenses incident to the final settlement of my estate) equally among any, and as many charitable institutions and hospitals located in the state of New Jersey as they (or the survivor of them) may choose and select: Provided further, if however my said trustees (or the survivor of them) shall continue to pay said income to the board of directors of the said 'The Mercer Hospital' for the entire term above stated, then in that case, it is my will, and I do hereby order, that at the expiration of the said term, my said trustees (or the survivor of them) shall pay the whole of the principal sum of said trust estate and all unused accumulations of interest or income thereon (less all costs, charges and expenses incident to the final settlement of my estate) to the said 'The Mercer Hospital' absolutely for its use and benefit forever.

"Lastly, I do hereby nominate, constitute and appoint my brother, George R. Whittaker, and my said sister-in-law, Mary A. Whittaker (and the survivor of them) the executors of this my last will and testament.

"In witness whereof, I have hereunto set my hand and seal this twenty-seventh day of February, eighteen hundred and ninety five.

"Wesley E. Whittaker. [L. S.]

"Signed, sealed, published and declared by the above named testator to be his last will and testament in our presence and we, in his presence, at his request, and in the presence of each other, have hereunto set our hands and seals this twenty seventh day of February, eighten hundred and ninety five as attesting witnesses. J. Judson Rue, 111 E. State St.

"John M. Crouch, 111 E. State St.

"I, Wesley E. Whittaker, of the city of Trenton in the county of Mercer and state of New Jersey, being of sound mind, memory and understanding, do hereby make this a codicil to my last will and testament, dated February the twenty-seventh, A. D. eighteen hundred and ninety-five, and I hereby revoke said will so far as this codicil shall affect the same.

"First. I do hereby revoke the fourth clause in my said will and testament and hereby give and bequeath unto my nephew, John T. Whittaker, the gold watch left to me by my father, John Whittaker.

"Second. I give and bequeath unto my brother, George F. Whittaker, the sum of four (4) thousand dollars out of the residue of my estate in addition to the sum of one thousand dollars given to him in clause seventh of my said will and testament.

"Third. I give and bequeath unto my housekeeper, Annie Hart, out of the residue of my estate, the sum of one thousand dollars in addition to the one thousand dollars given to her in clause eighth of my said will and testament.

"Lastly, I hereby confirm my said last will and testament in all respects except so far as this codicil shall alter the same. And I direct my said executors named therein to carry out the provisions of this codicil thereto.

"In witness whereof, I have hereunto set my hand and seal this first day of December, A. D., eighteen hundred and ninety-seven.

"Wesley E. Whittaker. [L. S.]

"Signed, sealed, pronounced and delivered and declared by the said Wesley F. Whittaker, as a codicil to his last will and testament, and to be taken as part thereof in our presence, and we in his presence and at his request, and in the presence of each other, have hereunto subscribed our names as witnesses.

"Margaret A. Whittaker.

"John M. Crouch."

The executors assumed the trusts imposed upon them by said will, settled the estate according to its provisions and according to law, and exercised the discretion given to them in the residuary clause in favor of "The Mercer Hospital" in all respects. Immediately after the death of the testator there came into the hands of the executors certain real estate and personal estate of the value of $34,841.01. The balance of corpus and net accumulations of interest which were distributed to the Mercer Hospital at the end of the nine-year period together amounted to $27,947.46, for which the said residuary legatee then gave to said executors and trustees an absolute release and discharge in writing, under date of January 17, 1908.

Shortly after July 28, 1914, there came into the hands of Mary A. Whittaker, as surviving executor of Wesley E. Whittaker, deceased, $123,801.45. This sum is claimed by the Mercer Hospital in reliance upon the provisions of the residuary clause in the will above mentioned. To restrain the said surviving executor from acceding to said claim this bill is filed; it being the contention of the plaintiff that said sum was not intended to come within the operation of said residuary clause, and that with respect to said sum said Wesley E. Whittaker died intestate.

The source from which that large sum of money was derived and the title of Wesley E. Whittaker and his executors thereto require explanation. On March 28, 1884, Albert J. Whittaker, who was a brother of said Wesley, died seised of real and personal estate of the then aggregate value of $308,067.88, having first made his last will and testament, which was duly admitted to probate in Mercer county, in this district, on April 7, 1884, and of which the following are the material provisions as they appear in the bill:

"First. I give to my wife, Margaret A. Whittaker, the use and possession of my residence during her natural life, all the taxes, insurance and repairs thereof to be paid out of my estate. I give to my said wife all my furniture, pictures, silverware, piano, and all other articles of use or ornament in said residence. I further give and bequeath to my said wife in lieu of dower, for and during the term of her natural life, without any power to sell or transfer the same, six hundred shares of the capital stock of the United New Jersey Railroad and Canal Company now standing in my name, with full power and authority to collect and receive to and for her own use and benefit all dividends and interest declared thereon after my death, and I do hereby order and direct that said stock shall not be sold, transferred or exchanged by my executors, or by any other person or persons whatever, during the life of my said wife, but shall be left and remain standing in my name on the company's books, and the dividends thereon paid to my wife alone, or her order, and not to my executors. Out of said dividends and interest I request my said wife to pay to her niece, Emma Chambers, for and during the natural life of the said Emma Chambers, six hundred dollars per annum.

"In case of the decease of my said wife before that of Emma Chambers, I direct and require my executors to retain sixty shares of the said stock and to pay the interest thereon to said Emma Chambers during her natural life.

"Second. I give to my oldest brother who may survive me the gold watch which I now carry, and to my brother, Wesley E. Whittaker, my office safe and furniture, and the coins, autographs, etc., etc., in said office.

"Third. I give to Albert Whittaker Moore, son of Randolph H. Moore, one thousand dollars and to Albert J. Whittaker McGuire, son of James H. McGuire, one thousand dollars.

"Fourth. I give to my brother Wesley E. Whittaker, fifteen thousand dollars; to my brother John H. Whittaker, fifteen thousand dollars; to my sister Ann W. Ellison, fifteen thousand dollars, and to my brother George R. Whittaker, twenty thousand dollars because he has a large family to support, the lawful child or children of them who may have died to take the share of the deceased parent.

"Fifth. I authorize and empower my executors to sell and convey my real estate, at their discretion, except my residence, which said residence I authorize them to sell after the decease of my wife.

"Sixth. After the decease of my said wife and niece, I give my estate to my lawful heirs, to be divided equally among them, share and share alike, the lawful child or children of any of them who may have died to take the share of their deceased parent.

"Lastly. I nominate, constitute and appoint my said brothers, Wesley E. Whittaker and George R. Whittaker, executors of this my will, and hereby revoking all wills by me heretofore made, I declare this alone to be my last will and testament.

"In witness whereof, I have hereunto set my hand and seal this seventeenth day of July, in the year of our Lord eighteen hundred and eighty-two.
                                        "Albert J. Whittaker. [L. S.]"

Of the foregoing will, the second paragraph, creating the life estate for his widow and her niece, the sixth paragraph, providing for distribution subject to the rights of such widow and niece, and the last paragraph, appointing his brother, Wesley E. Whittaker, as one of his executors, are the most important parts.

The estate of Albert J. Whittaker was duly settled by the executors therein named, who had in their hands, after setting aside the 600 shares of stock of the United New Jersey Railroad & Canal Company for the benefit of the life tenants, and after paying the pecuniary legacies, a large residue of personal estate. It was doubted by the executors whether such residue was presently distributable. To secure a judicial determination of the question the executors (including the said Wesley E. Whittaker) in the year 1885 instituted proceedings in the Court of Chancery of New Jersey, which were so proceeded with that on June 16, 1885, a final decree was entered by the then Chancellor, sustaining the validity of the trusts and other provisions of the will, including the disposition of the residuary estate, but holding that by the terms of the will distribution of the entire residuary estate should be suspended until the death of both the widow and her niece. The opinion of the court in said proceeding may be found at length in Whittaker v. Whittaker, 40 N. J. Eq. 33, and the conclusion arrived at is briefly stated in that part of the opinion which follows, with one word italicized by this court:

"It follows that the persons who, at his death, were his heirs at law or next of kin, are not entitled to take *now*, as their property, that part of the estate which is not needed for the purpose of paying debts and legacies and providing for the widow and her niece, according to the will."

No appeal was taken from that decree, which therefore remained the law of the case and governed the construction of said will for some years, during which Wesley E. Whittaker made his will and died. At the date of said decree, the widow, Margaret A. Whittaker, was 52 years of age, and her niece, Emma Chambers, was 25 years old. Margaret A. Whittaker died in 1908. On May 25, 1912, after the death of both the executors of Albert J. Whittaker, deceased, and the substitution of their successor, the plaintiff in this case and others filed their bill in the Court of Chancery of New Jersey, praying that the trust created and existing under the will of Albert J. Whittaker, deceased, should be terminated, and such proceedings were had that, although the Court of Chancery followed the decree of that court entered June 16, 1885, hereinabove referred to, yet upon appeal to the Court of Errors and Appeals of the state of New Jersey the appellate court reversed the decree of the lower court and remitted the proceedings, with the result that a final decree was entered adjudging that the residuary estate of said Albert J. Whittaker, deceased, be distributed (except as to stock necessary to protect the rights of said Emma Chambers) to persons named, including Mary A. Whittaker, executrix of Wesley E. Whittaker, deceased, whose share was the aforementioned sum of $123,801.45. The opinion of the Court of Errors and Appeals is found in Clement v. Creveling, 83 N. J. Eq. 318, 91 Atl. 89.

### Discussion.

[1] It is urged upon behalf of the plaintiff that, in ascertaining the intention of Wesley E. Whittaker with respect to his residuary estate, it must be assumed that at the time he wrote his will he had in mind

the first decision of the Court of Chancery giving a construction to his brother's will. This assumption, however, is coupled with the suggestion that he must have regarded that decision as practically denying to him any interest in his brother's estate. Little weight, if any, should be given to this for the following reasons: Wesley E. Whittaker was perhaps a man of some business experience, else he would not have been intrusted with the management (even in conjunction with another) of the large estate of his brother, Albert J. Whittaker. Although this may not have been so at the time of his appointment, yet before his death he probably acquired some knowledge of business by reason of the performance of his duties as executor and trustee. Having a hope at least that he was a beneficiary under his brother's will, when he instituted the proceedings of 1885, can it be said that he was content to abandon it upon an adverse decision by an inferior court? Such is not the conduct of ordinary men who believe that they may be entitled to share in a large estate. They seek the court of last resort before they abandon hope. Again the opinion of the Chancellor in 1885 did not hold that he had no interest in the estate, but simply postponed the enjoyment of it. Furthermore, if it were deemed proper that the entire estate should be held undivided for the protection of the two life tenants, yet by all rules of construction the estate of the remaindermen was vested in them by the language of the sixth paragraph of Albert J. Whittaker's will.

Doe v. Considine, 6 Wall. 458–475 et seq., 18 L. Ed. 869, is a good example of the extent to which courts had gone in determining the character of remainders, and is conclusive that no new principle was pronounced by the decision of the Court of Errors and Appeals in holding that Wesley E. Whittaker's interest in the estate of his brother was vested. Indeed, there seems to be nothing to justify the inference that Wesley E. Whittaker at the time of his death believed that he had no interest in his brother Albert's estate. On the contrary, it is fair to assume that he knew he had an interest therein of which the right to possession was merely postponed.

[2] However, had Wesley E. Whittaker been of the belief that he had no interest in Albert's will, yet the language of the residuary clause in the former's will, "all the rest, residue and remainder of my estate," was broad enough to include it.

[3] The mere fact that a testator may not have knowledge of his estate does not cause an intestacy, unless he lacks the capacity to know of what it consists. There is no allegation or suggestion of want of testamentary capacity on the part of Wesley E. Whittaker.

[4] It is further insisted upon the part of the plaintiff that the very words of the residuary clause manifest clearly that Wesley E. Whittaker did not intend to dispose of his share of Albert's estate. Special emphasis is laid upon "invest," "interest," "income," "principal sum," and so forth, as being inappropriate words to describe property which is not susceptible of being diverted into capital. Those words, however, are not meant to be descriptive of the devise or bequest. In no sense are they to be deemed to qualify the nature of the residuary estate. They are used in expressing the duties to be performed by the trustees. The residuary clause of Wesley E. Whit-

taker's will is conventional in form and expression. The description of the estate is most comprehensive. The names, title, and duties of the trustees, as well as the discretion given to them, are carefully stated. The designation of the cestui que trust, the limitation upon it as to the use of the income, and the provision for the determination of the trust are clearly set out. If it were undoubted that the testator believed that he had an interest in his brother's estate, in what way could that residuary clause be improved, so as to pass the same?

[5] It is further urged that plaintiff's position "is strongly fortified by the oft-repeated maxim that the law favors a distribution as nearly as possible as conforms with the general rules of inheritance and distribution." This maxim, while entitled to weight when the language of the will is obscure, and when it appears that next of kin have been dependent upon the testator, is not of great value in the decision of this case, because the language is not obscure, and it has not appeared that any of the next of kin, of whom none are closer than nieces or nephews, have been dependent upon the testator.

It would be of little value to comment on all the cases cited by counsel in support of their contentions. Few will cases are of value as precedents in controversies such as the one now decided.

[6] One word only is proper with respect to the release executed by the Mercer Hospital. It cannot operate by way of estoppel, because no one has been or can be affected by it to his hurt. It can never be that a mistaken belief by a beneficiary can effect a change of a testator's intent.

Looking at the plaintiff's case from every point of view, the result must be a finding that it is without merit. The court therefore reaches the following conclusions of law:

1. That by the terms of the will of Wesley E. Whittaker, deceased, the residuary estate included his interest in the estate of his brother, Albert J. Whittaker, deceased.

2. That the plaintiff has no interest in that portion of the estate of Wesley E. Whittaker, deceased, which was derived from the estate of Albert J. Whittaker, deceased.

3. That the bill must be dismissed, at plaintiff's costs.